May it please the court, my name is Will Fox with the law firm Winston & Strong. I represent the appellant petitioner Minna-Marie Brandt. This is a wrongful retention case under the Hague Convention in which the district court committed what is clearly a legal error that this court should review under the de novo standard. The district court erred by determining whether the Ms. Brandt's custody rights to her children by determining Ms. Brandt's custody rights with reference to a March 2022 Swedish court order that co-stated the wrongful retention of her child by around eight months. What the district court should have done under this court's precedent in white versus white and the clear text of the Hague Convention is evaluate Ms. Brandt's rights as they existed at the time of the wrongful retention in July, specifically July 7th of 2021. So counsel, can I ask one thing right off the bat? Article 17 of the convention is what I'd like you to help me with. It certainly says that a custody decision shall not be the sole fact, but it says that it may be taken into account. Now it's not talking about the date or chronological. There's nothing specific about when that custody decision is and I'm familiar with a white case. So is first, can we, does white preclude us from even looking at the March custody order or is there a way we're supposed to look at it and if so, how? Yes, Judge Quattlebaum. I will specifically address section 17 first and then I'll move on to your question about white and whether it prohibits any reference at all to that post-wrongful retention. So our position with respect to section 17 of the convention is that it doesn't, it doesn't apply in this case at all. It gives an example of one thing that is not sufficient on its own for a court to refuse to send a child back to a home country. The Meredith case that the what happened was a man who was a respondent in that case had custody under United States law of the child that was at issue. Before that happened, the mother had taken the child overseas, but once custody was granted to the gentleman, he regained custody in Arizona of the the mother was in England and she obtained an order from a court in Birmingham and tried to use that order as the basis of a Hague Convention petition in the Arizona district and the district court relied on section 17 to say that order that you've obtained in England is not, cannot be a child, send the child back. To get to the rest of your question about the extent, if any, to which the court can consider the March 2022 order, the courts need not totally ignore it. Indeed, both we have relied on part of the 2020 order in this case to illustrate the content of the party's at the time of wrongful retention, which is proper for the court to do and as the appellees point out, the court did that in white versus white. What happened in white versus white is that in Switzerland, a man and a woman had a child. The woman under Swiss law had sole custody of the child. She took the child out of Switzerland to the United States. There was subsequently a Swiss appellate court decision and that appellate court decision is what appellees point to as an analog to their reliance on the 2022 order in this case, but what this court recognized about that post-wrongful removal Swiss appellate decision was that it was authority of what the mother's rights included under Swiss law at the time of wrongful retention. If you continue on through white, another subsequent Swiss order purported to give the the petitioner in that case joint custody of the child again and that is the order that this court said should not be considered in that case because what that order did and what the March 2022 order did in this case purport to and do indeed under the home country's law change the party's rights with respect to the children. The March 2022 order does not say under the previous... The March 2022 order correct gives custody to appellee, is that right? Yes. So the the Swedish order and the United States order both give custody to the appellee, correct? I'm not aware of a United States order in this case. Okay, I'm sorry the district court's the Swiss order, the March 2022 which gave custody to the father. Was that the culmination of the investigation that started in December 2020 when there was an investigation as to or started as to whether the mother's home was a safe environment? I think it may be fair to characterize it as the culmination. All right, and in the beginning that investigation in December 2020 wasn't that part of the reason the appellant and appellee agreed that appellee would take the children to America? So the investigation I believe was that Child Protective Services was about to take the children from the mother in Switzerland, which the Swiss order ultimately did in March of 2022, correct? So yes, but to clarify, Switzerland was involved in white versus white. I'm sorry, okay Sweden, thank you. Yes. Yes, Judge. So what I will say about this agreement that the appellees have relied on, it is a red herring in this case. Under Swedish law, as we have discussed in our briefing, on July 6, 2021, the Swedish courts ruled that the parties had joint custody over the children. Wrongful retention. How is it wrongful retention if they had joint custody? Because why are her rights more, why are her rights superior to his rights at that point when they have joint custody and when they did both agree that the children would come to the United States? So I have two responses. The first response is that Swedish law, the parent and child code, provides for procedures that must be obeyed when a joint custodian, a person with joint custody of a child wants to change the child's residence. The two things, one of two things has to happen. There has to be a Swedish court order changing, approving the change of the child's residence or there has to be a written and signed agreement by the parties that is also approved by the Swedish court. So practically speaking, now that in Sweden there has been an order entered removing custody from appellant, if we rule in your favor, where would the children go? The answer is that they would go back to Sweden. To where, foster care or whatever the equivalent is there? I, first of all, I believe that is outside the purview of what this court should consider. Well I'm asking you, so where would they go? Practically speaking. The record evidence in this case is that Mr. Caracciolo would go wherever in the world with the children. I think his testimony at trials that he would follow them with to the ends of the earth. So if the court ordered the father would go back to Sweden with the children. But does it, does the treaty require that? I mean, if we order, if we accept your argument and order the child returned, let's say they, you know, the plane lands in Sweden. Sorry, the what? The plane carrying them lands. They get out, they're on Swedish soil, and then they get back in another plane and come to the U.S. That wouldn't be improper, right? Because now there's an order that your client doesn't have custody. So, I mean, it just seems so weird. I mean, you have a technical reading in the statute, it may be right, but it seems to me if they went back and then just, you know, got on another plane, there wouldn't be anything wrongful with that removal. So, I mean, it seems like we're just kind of going through this kind of technical issue where kids' lives are at stake, and maybe we're bound by the treaty and we do that, but, you know, I don't understand why I say it couldn't happen, would be improper under the Hague Convention. Do you think it would be? So, to be quite straight with you, Judge Quattleman, I don't think it, I don't think that it would be improper if the world is exactly how I understand it to be right now, which is that there are no Swedish proceedings ongoing with respect to the children. I do not know what would happen, for example, if tomorrow Ms. Brandt initiated a proceeding. There's not evidence in the record about that. The evidence in the record is that she would do so if the children went back. I don't know if that would prevent him from taking the children back, but if there's no, nothing under Swedish law preventing him from doing so, I think that that's something that could happen. To focus in on another thing that you said, Judge Quattleman, I think that the treaty does still require this result because of its remedy and because the plain language of the time of the wrongful removal or the time of the wrongful detention, and there's good reason for that, and the facts of this case actually illustrate why there's good reason for that. If you look at the March 2022 custody order, there are various reasons in there related to the best interests of the child, why the Swedish court decided to award sole custody to the appellee. Some of those reasons are that the children were already in the United States, and because considering of the best interest of the children, the fact that they were in the United States, according to the Swedish court, made awarding joint custody difficult, according to that order. So what the presence of the children in the United States did is influence how that March 2022 order came out, and the upshot of that, when the court's thinking about this class of cases as a whole, is that before proceedings in a home country have concluded, a person with joint custody could take children over to the United States in hopes that the courts in the home country would consider that as a reason to award that person sole custody, which appears to, I'm not saying that that's why the children were taken to the United States in this case, but that is, that would be a result that would be arguably. Why were the children taken to the United States in this case, in our case? So I believe that the children were taken to the United States because the parties agreed that they can go there. A dispute below, which I think ought to be, ought to have been resolved in favor of my client, and appears not to have been resolved at all, was that the children, it was agreed that the children would come to the United States for a limited period of time. The evidence in the record, I believe, is for a three-month period. Well, the evidence in the record is contrary because an appellant at one point says three months, but then later, and I think the district court cites this in its order, says that she was not sure how long it would be. Well, so the district court did say that in its order, and I believe, oddly, the district court's finding on that issue is that the evidence is non-finding to me. Why is that a non-finding? I mean, one of the defenses or exceptions to a wrongful removal or wrongful retention case is that there was an agreement. Now, I know it's got stuff about being sanctioned by the Swedish law, but anyway, what the district court said is I can't tell that there was an agreement. So, that exception is akin to an affirmative defense that a respondent can raise in a hate convention case. The district court does not purport to resolve any affirmative defenses in its order. I can see how that would be relative to that affirmative defense, but the burden would actually be on the respondent to prove that affirmative But, to your point, if the district court didn't resolve affirmative defenses, shouldn't we send it back to say, hey, there's some affirmative defenses and there's some exceptions under the convention that haven't been addressed? Even if we agree with you on the removal issue under the treaty, aren't those still live issues or issues that haven't been resolved? Judge Quattleman, I'm quite out of time. I can respond to your question if you'd like. So, our position is that the court need not remand for consideration of those affirmative defenses. The two affirmative defenses that were raised in the post-trial briefing below were essentially a statute of limitations defense. And this, I believe it's called the acquiescence defense, which is that the respondent must show that petitioner acquiesced to the children's presence in the United States. As to the first one, I think we explained pretty clearly in our brief why there's not a statute of limitations problems here. And I'll move to the acquiescence one here just very quickly. And the evidence in the record, which is pretty clear in our view that there was no consent to an indefinite trip to the United States, are in both the September 2021 Swedish social services report and also in the March 2022 order, on both of which Appleese had relied. And I can give you in the September report. You'll need to slide down for me or without my knowledge. Okay. And the same for the March 2022 report. Okay. Well, with that, Judge, I have no time to yield, so I'll be finished. Thank you, Mr. Fox. Mr. Epperson. Yes, Your Honor. My name is Steve Ockerman. I filed a notice of appearance, Your Honor, in this case as amendment. And I'm with Co-Counsel Lauren Watkins. We're here on behalf of Mr. actually pronounced Carsello. You know, it's a hard one. I want to jump right to the point that Mr. Fox made about what happens, Judge Stacker's question, what happens if the district court sends this child back to Sweden? The problem is that she lost the appeal in the custody case that she filed prior to the retention, alleged retention date. She lost that appeal. She does not have custody at all. The child goes back, foster care swoops in, takes that child, and that's the end of that. The child is in state custody. Nobody has custody. Our client, per the Swedish law, does, the court order, does have custody. And so he could then, therefore, get back on the plane, very nice plane, fly back, and he is entitled to do that by the court's order. I would like to jump right into the White case, because that's obviously this court's case from 10 years ago. The appellant sort of pinned her entire appeal in the assertion that a post-removal order should not be considered at all on the issue of wrongful retention of a child in the U.S. But that is not what White held. White did not repudiate Article 17. White merely stands for the proposition that wrongfulness depends on the type of custody at the time of removal. But it does not hold that you can never examine the subsequent order to get to that issue. And I note that in White, there was actually three court orders. The first one was a pre-removal order that gave the snobulous right to mother of custody. It doesn't explain what that meant, much like our case. There was a post-removal order a year later, 2010 to 2011. The post-removal order clarified that that mother had sole custody. And then there was the later order, which White talks about, you shouldn't really consider that order. It was two years later that said, we're switching custody to father. Two years later. But the White court, at the very end of their opinion, they made it very clear that that order did not repudiate the original 2010 order. It did not retroactively change that order. So the White court said, this new order doesn't tell us much because so much time has gone on. But we know now what the 2010 order said. And that's all that White says. It doesn't say you can't look, Black and White, at another order. Counsel, let's assume we believe, just right now I'm not deciding this, that White directs us to look at the time of the removal. Or the time of the retention. I should say retention. At that time, it seems pretty clear that under Swedish law, there's joint custody. And Swedish law says things about what happens with joint custody. Section 14a talks about changes of residency. Section 13 talks about other things and references section 11. It seems that at least strictly under Sweden's law, that the mother has equal rights in those sort of decisions. And so she would have say so in the decision for the children to stay in the United States or not under the applicable law. Do you disagree with that? At least if we are forced to look at this by our precedent at the time of the alleged wrongful retention. Yes, I do disagree with it, your honor. I would turn it a little bit by looking at what joint custody means under Swedish law. And we don't know. We don't know under the convention what joint custody means. It's just not defined. In fact, in the explanatory report to the convention, to the Hague convention cited in the brief, it says in section 11, the type of legal title which underlies the exercise of custody rights over the child matters little. It's just a phrase. Where I practice, we don't know what joint custody means. It's something that everybody tosses out. We know what sole custody means. And in this case, there was testimony about joint custody. There was an interim order granting joint custody, but it did not require a return. There was the Social Welfare Committee's report which recommended sole custody to father, and that mother could not have custody because of her issues. And the import of that is... But why didn't Swedish law tell us? You say the Hague doesn't talk about what joint custody is. That may be true, but Swedish law may not say everything about joint custody, but it says some things about it. And what it says about it seems like it at least includes the right to say where the children are going to live. I could not find that anywhere, Your Honor. What about 14A? If both parents have custody of the child, the court may, on application, or one of both, decide which parents it is to live with. The parents may enter into an agreement concerning where the child lives. This agreement shall be valid if it's in writing and the Social Welfare Committee's report. Isn't that pretty much saying both parents have a right in that decision unless there's an agreement approved or a court order? Here's where we get into the problem of Peruse, Your Honor, and why she couldn't prove her case. There was evidence of a written agreement, at least it was talked about, but it's never been produced. We haven't seen it. And you have conflicting facts about whether they actually had an agreement, and a big conflicting fact where the opponent herself testified. I don't really know who set a retention date. I don't So, I hear you. I think the district court said that there was conflicting evidence of an agreement. In absent of agreement, don't we default back to the law which says that both parents have the right to be part of that decision? Well, if it said that somewhere, Your Honor, I would agree with that. But what you have is the district court looking back at an order that talks about a Social Services Committee report, as well as an investigation, which made very clear fathers should have sole custody. You know, they knew that this child was in the United States when they started that investigation. And so, I think we have to look at, and I think also, Your Honor, we have to look at the Social Services Committee as a source of law. And you're talking about the March 2022 order, is that the order you're talking about? What's your best argument as to why the district court could consider that order, which was nearly a year after the alleged wrongful retention occurred? I think the most argument is that the court, its entire decision was based just on that order. And I think the court made it very clear that was not the case. It looked at it as evidence. And I don't think the court had to tell us what evidence meant in that case. It's just something the court looked at. Okay, so I guess my question again is, why was the court entitled to look at that? Or do you agree that the court should not have looked at that? I think absolutely it should. Okay, so why could it, what's your best argument as to why that was appropriate to look at that? Well, A, is that distinguished white? I don't think white says that you can't do that. I think actually the court in white actually did look at the order. Otherwise, they could not have determined sole custody. They looked at the previous order and found that it was custody. They looked at the subsequent order and saw the word sole custody. And they used the word sole custody at the very end of their appeal. So they were looking back. The other case, the Sarasota case, Meredith, that's exactly what they did. They went back and looked at an order to determine what the rights of custody were at the time in that case of removal, I believe. I don't think Article 17, there's no prohibition against Article 17 for obvious reasons. But Article 17 allows us to look back. I mean, I think that's unequivocal that you could look back and take into account the reasons for a decision. And, you know, if we want to take discretion away from the court, the convention certainly had a way to do that. The signatories could have put that language in there. You're not allowed to look at anything that happened after. What if the March 31st, 2022 order was removed from the equation? Could the district courts still be sustained? Yes, ma'am, because she didn't prove her case. She could not prove there was a return date. If we found that considering the March 2022 order was not appropriate, though, would we need to remand it back to the district court to consider it without that order? I would say no, Your Honor, because that's not what the order is dependent on. You remove that, you have the same fact that Ms. Grant could not prove beyond the reason or by the bottom of the evidence that her custody rights were breached. And that's all she had to do. The other two prongs weren't even contested. But it sounds like the way you're saying that she didn't prove that custody rights were breached is because there is uncertainty on whether there was an agreement to return it. Is that right? I think that's part of it, Your Honor. And I think also, well, the court did look at the Social Services Committee's report, which came after the wrongful pretension, right? I think that was September after the July. Yes, that came after. So the two things the court looked at is a report that came after and an order that came further after. Well, and also this meeting that they had at Social Services, even prior to removal, where they were told that the child, the children would go into foster care rather than mother's custody. Right. So the court considered the initiation of the investigation in Sweden that they did. And one more thing. There was an interim order, Your Honor. And that didn't help a whole lot because it just talked again about that Ms. Brandt did not have sole custody, and then it used this phrase joint custody again. But what's interesting about that interim order, the court clearly knew at that point that the children were in the United States. There is nothing in there that says, you got to bring those kids back. They just let it be. And I think that our court could certainly look at that and say, I'm not seeing where this is a wrongful retention. He was allowed to take those children. Our court did not say, or the Swedish court did not say, bring them back now. I think they certainly would have, but I don't know why they wouldn't say that. Again, I don't think we can look at any of these cases without looking at Article 17. We can't just gloss over it. The white court, interestingly enough, did not address Article 17. It just was not mentioned in there. I looked and looked. But Article 17, you can take into account a decision related to custody, and it doesn't have to be a court order. It can be other things. And also, Article 17 tells us nothing about pre-retention time periods, post-retention time periods, or pre- or post-removal periods. The court can look at any of those. And from the explanatory report again, it references administrative authorities must be understood as a simple reflection of the fact that in certain member states, the task in question is entrusted to such authorities. So if the social services committee is saying, mom, you cannot have custody, she's not going to get custody. And that is a source of law. This should be considered by our court. Also in Section 69 of that report, the word decision is used in its widest sense. It embraces any decision or part of a decision. And I would argue that means judicial or administrative. So social services can come in, take your children. They can remove your parental rights. There's all kinds of things they can do, and that is sanctioned by the force of law. And I think that's what's going on here. Our court is looking at that and saying, you know, you don't have custody. There's nothing here that says you can't take the children or that you have to bring them back. And you have a burden to prove by preponderance of the evidence that your rights were breached. And she could not do it. So we're just asking the court to affirm the lower court's decision. And that concludes my presentation. If there are any questions at all. Thank you. Thank you. Several, several points. I believe I'll need to use all of my five minutes on this. The September social services report, which is also post-wrongful retention, and which has been characterized as having the force of law, did not have the force of law. Section five of the Swedish Parents and Family Code says who gets to determine custody of the child. That report even recognizes that its recommendation would have to be accepted by a court. The March 2020 second order later did that. Mr. Fox, isn't your problem that you can't establish there was a wrongful detention? Because the Hague Convention, which is the gateway to jurisdiction here in the United States, requires wrongful. And isn't it understood that under they had joint custody? I mean, forget about the orders. They had joint custody at the time, correct? Yes, they had joint custody. And that's the reason that the wrongful retention... Wait a minute. If they had joint custody, children come to the United States with him, how was that wrongful? Because under section 14 in the Swedish Parents and Family Code, the only way that anyone with joint custody could change the residence of the child was to get a court order or to get a written agreement with the other parent that was approved by social services. That's a residency question. That's not necessarily custody, joint custody. Well, it's a right of a person with joint custody to have those procedures followed. They get to have a certain amount of say. We also have a right to try to establish residence in the United States. And while here, but in Sweden, could he not petition for that? They both would have the right to try to change residency, but that's not the question. The question is wrongful retention at the time that he had joint custody. What makes that wrongful? Because he is purporting to change the residence of the child in violation of the rights that Ms. Brandt has under Swedish law. Did he petition for residency? No, he didn't do either of those. Well, then how was it wrongful then to have his children with him in the United States? What was wrongful about it is that he brought them here and then kept them here indefinitely. His own position is that he was changing the residence of the children. Indefinitely? Yes. Indefinitely. Children are dynamic. They're not some like this sticking here. They're dynamic. What was going on in Sweden? Not very well for the mother. So what is he supposed to do? Well, I guess I'll send them back. Into what? Into what? A foster? I'm talking about the facts of this case. A foster placement? It's not dispersing anything. Everybody wants the best for mom and dad and everybody and the children. But the point is, you have joint custody of your children with you safely. You're saying that's wrongful because you extend a stint in the United States with your children, which you have joint custody with, given the circumstances? I don't think you've established that was wrongful. That's the key. Forget about the orders afterwards, all the orders afterwards just hurt your client, in your case completely, because you took all of that out. Where is the wrongful? So my position is that it is wrongful because Mr. Crassiolo violated Ms. Brandt's rights by purporting to keep the children here indefinitely. Her rights? Yes, her rights. Her rights are that as a joint custodian, I've said that two times, of the children is that the children cannot be taken and have their residence changed without a court order or her written agreement approved by social services. They weren't taken. They were with the approval of her. The indefinite retention of them here was not with her approval. I don't think there's... So when did it become wrongful? It became wrongful on July 7, 2021. That's when the... The exact date that for three months... I'm just asking you, are you saying it's because that's when the three months ended? And that was wrongful? Yes. By any court order, do you know? No, it's not wrongful. By any agreement that was written at all? So... All those are no's, I take it, because you're moving on. Is that no? There was no law violation except for you said that to change residency, you have to petition. Yes. We're not complaining that a convention remedy lies here because of a trip with temporal limits to the United States, but that's not what happened here. The appellee's position in the case is that there was an agreement that he could take the children to the United States indefinite, forever. That is the story that they told in the district court. That's the story that they told in their briefing. That is what Swedish law did not allow him to do. And I'm out of time. The courts knew where they were when they adjudicated the case against her. They didn't say anything, but you're talking about that opportunity to say exactly what you said. Well, so they did not. In the September 2021 order, the September 2021 report actually acknowledges an agreement for a trip of three months. And so does the March 2022 order. So it makes sense that the Swedish court on July 6th, 2021, would not order the children back at some point because those subsequent Swedish legal documents show that the Swedish authorities did believe there was an agreement with respect to a trip. And enforcement of that retention would be that the children go to foster care, right? Because your client has already been determined that she wasn't able to do so. So you're saying that it was wrongful because children should have been in foster care in Sweden. Is that right? At that time, it's not clear from the record that the children certainly, beyond any doubt, would have gone into foster care if they had come back from the United States. I thought the record was, unfortunately, given the mother's circumstances, either the child go with the father or they would go to foster care. Is that not right? Is that not right? You're just hunching your shoulders. I'm asking you a question. Is that not right? I second guessing myself. You second. Okay, that's all I have for you. Court, that's all your response is. Go ahead. You have some time left, I guess. No, your time is up, but I took a couple of minutes, so you can have a couple of minutes more. Oh, no. My last thing that I said to you was that I was second guessing myself about whether she had to. Go ahead. Finish your time. Foster care, so I just want to make clear that that's what I said. I want to make sure I heard that, too. Did you just say you agree with Chief Judge Gregory that if they came back to Sweden, they would go into foster care? No, so if the question is back then, I said that I can't remember at this very minute. I disagree that if they went back now, that they would absolutely have to go to foster care for the reasons that I discussed earlier, which is that the father has said that he would go with them. If the father went with them, presumably they would be with him because he has sole custody over them. He would not need to go to foster care. Indeed, as I also agreed with you, Judge Quattlebaum, earlier, he could also bring them back. I do not agree with the premise that this court's decision to return the children to Sweden would be forcing them into foster care. With that, I will conclude my remarks. Okay. Thank you, counsel, both for your arguments here.
judges: Roger L. Gregory, Stephanie D. Thacker, A. Marvin Quattlebaum Jr.